IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| TOPIA TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> DROPBOX, INC., SAILPOINT TECHNOLOGIES HOLDINGS, INC., and CLEAR CHANNEL OUTDOOR HOLDINGS, INC. <br><br> Defendants. | Case No. 6:21-cv-01373-ADA <br><br> **JURY TRIAL DEMANDED** <br><br> **FILED UNDER SEAL** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT DROPBOX'S MOTION TO SEVER, STAY, AND TRANSFER**

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT .................................................................................................................3

    A. The Court Should Deny Defendant Dropbox's Motion To Sever Claims Against SailPoint and Clear Channel ...............................................................................3

    B. The Court Should Deny Defendant Dropbox's Motion To Stay Claims Against SailPoint and Clear Channel ...............................................................................8

    C. The Court Should Deny Defendant Dropbox's Motion To Transfer to NDCA ......9

        1. This Case Could Not Have Been Brought In NDCA .................................9

        2. Private Factors Support Denying Transfer of this Case from This District ...................................................................................................10

        3. Public Interest Factors Also Support Denying Transfer of this Case from This District ..............................................................................................13

III. CONCLUSION ............................................................................................................15

TABLE OF AUTHORITIES

**Cases**

*Flygrip, Inc. v. Amazon.com, Inc.*,
  No. 21-CV-01081-ADA, 2022 U.S. Dist. LEXIS 114783 (W.D. Tex June 28, 2022) 9, 10

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ............................................................................................... 14

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ............................................................................. 13

*In re Volkswagen, Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................................................... 9

*Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*,
  6:11-CV-234 LED-JDL, 2012 U.S. Dist. LEXIS 114503 (E.D. Tex. May 30, 2012) ........ 3

*Japan Display Inc. v. Tianma Microelectronics Co.*,
  No. 2:20-CV-00283-JRG, 2021 U.S. Dist. LEXIS 160256 (E.D. Tex. Aug. 25. 2021) ... 10

*Parkervision, Inc. v. Intel Corp.*,
  2021 U.S. Dist. LEXIS 24588 (W.D. Tex. Jan 26, 2021) ........................................... 13, 14

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ............................................................................................... 14

*Realtime Data, Inc. v. Rackspace US, Inc.*,
  6:16-CV-00961, 2017 U.S. Dist. LEXIS 27422 (E.D. Tex. Feb. 27, 2017) ....................... 7

Plaintiff Topia Technology, Inc., ("Topia" or "Plaintiff") opposes the Motion to Sever and Stay (ECF No. 43) filed by Defendant Dropbox, Inc., ("Dropbox" or "Defendant") on July 26, 2022. Dropbox's Motion is based on the First Amended Complaint (ECF No. 8), filed January 18, 2022. Since the filing of Defendant's present Motion, Plaintiff has filed its Second Amended Complaint ("SAC") for patent infringement against all Defendants, including SailPoint Technologies Holdings, Inc. ("SailPoint") and Clear Channel Outdoor Holdings, Inc. ("Clear Channel"). ECF No. 45. The allegations in the Second Amended Complaint augment and supplement those contained in the First Amended Complaint and, along with Plaintiff's Supplemental Preliminary Infringement Contentions, moot the issues raised by Defendant's motion. Declaration of C. Iyer ("Iyer Decl.") ¶ 56, Ex. 20.

Contemporaneous with Defendant's motion, Defendants SailPoint and Clear Channel filed a motion to sever and stay the claims against themselves (ECF No. 42), which Plaintiff opposed (ECF No. 47).

## I.    INTRODUCTION

Plaintiff's SAC accuses Dropbox of direct and indirect infringement, and also alleges SailPoint of direct and indirect infringement. These acts include SailPoint's marketing and promotion of Dropbox products and services integrated with devices and software associated with SailPoint to perform file sync operations (*e.g.*, SailPoint's Identity Governance Solutions integrated with Dropbox products and services, SailPoint's "Dropbox Connector"). ECF No. 45, ¶¶ 67-69. Plaintiff accuses Clear Channel infringement based in part on Clear Channel's marketing and promotion of Dropbox products and services to its affiliates, subsidiaries, and other companies including those in the entertainment business. ECF No. 45, ¶¶ 76-79. Dropbox urges that the resolution of the infringement claims against Dropbox would resolve all claims against Defendants SailPoint and Clear Channel. But that is flatly wrong. For example, a finding

1

that Dropbox is liable for induced infringement by inducing others to infringe does not mean that SailPoint and Vistra are necessarily liable for direct infringement. The issue of infringement is not entirely common to all three Defendants and therefore resolution of claims against Dropbox does not resolve all the claims against SailPoint and Clear Channel. The gravamen of Plaintiff's dispute lies with *all* Defendant Dropbox, SailPoint, and Clear Channel – not with Dropbox alone, so the claims against SailPoint and Clear Channel should not be severed.

Dropbox also urges transfer of this action to the Northern District of California (NDCA). But to transfer for convenience under § 1404(a), venue must be proper in the transferee district. Defendants do not dispute that venue is proper in this District for all the Defendants, but there is no evidence that venue is proper for all Defendants in (NDCA). Accordingly, if the Court decides against severance, the Court need not consider transfer to NDCA.

Moreover, the convenience factors weigh against transfer to NDCA. Dropbox's largest office outside of California is in this District. Key evidence and numerous witnesses who Plaintiff intends to rely on are located in this District, particularly evidence and witnesses related to Dropbox and SailPoint integrations, Dropbox's inducement of third parties in this District, and SailPoint and Clear Channel's inducement of third parties in this District. Local interests strongly favor having this case decided in this District because of the involvement of local entities including SailPoint and Clear Channel, as well as third parties. When Plaintiff's choice of proper forum, selection of defendants and venue are properly accounted for, transfer outside this District is not warranted.[1]

---

[1] Notwithstanding all the Defendants' stonewalling, be it with respect to their refusal to provide technical disclosures and access to integration software or Dropbox's deponent ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and Dropbox's activities in its Austin office, there is

2

## II.  ARGUMENT

### A.  The Court Should Deny Defendant Dropbox's Motion To Sever Claims Against SailPoint and Clear Channel

In assessing whether claims should be severed, this Court has considered whether: (1) the claim to be preserved is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims is warranted under 28 U.S.C. § 1404(a). *Innovative Automation, LLC v. Audio Video & Video Labs, Inc.,* 6:11-CV-234 LED-JDL, 2012 U.S. Dist. LEXIS 114503, at *19 (E.D. Tex. May 30, 2012). Here, all three factors favor denying severance.

SailPoint and Clear Channel are not peripheral to Plaintiff's claims, because (1) the accused products and services do not operate as offered "off the shelf," but require configuration and customization for their implementation; (2) the infringement claims against SailPoint and Clear Channel are plainly different from the infringement claims against Dropbox; and (3) SailPoint and Clear Channel are not mere customers, but are collaborators with Dropbox with respect to the promotion and implementation of Dropbox's products and services, and in the case of SailPoint, a Dropbox "Partner" in the creation of a new product. Any reliance on the "customer-suit" exception is misplaced because this is not a customer suit.

Clear Channel – an enterprise client did not merely purchase Dropbox's products and use them. Dropbox's products are especially configured for Clear Channel through an implementation process that is uniquely controlled and configured by Clear Channel as the enterprise client, a process that may take over a year. *See* Iyer Decl. ¶ 43, Ex. 7 (stating that deployment is a process that varies greatly and may take from two weeks to over a year).

---

enough evidence in the public record to keep maintain this action in this District. *See* Declaration of C. Iyer ("Iyer Decl.") ¶ 39-42, Exs. 3-6. *See also, id.*, at ¶ 53, ███████████████████████ .

3

Dropbox also provides "Service Partners" that help enterprise users deploy its products. See Id. *See id.*, at ¶ 53, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). In addition, the web address through which an enterprise client shares associated with Dropbox product and services and its user interface (UI) are specific to the enterprise client. *See* Iyer Decl. ¶ 44, Ex. 8.

The implementation of Dropbox products and services for SailPoint is even more customized. SailPoint, a Dropbox "Premier Partner," (ECF No. 45, ¶ 68)[2] has access to "Dropbox Business Sandbox Accounts," "Developer Support," "*Custom* Go-To-Market Plan," "*In-Product App Promotion [of Partners' Product] to Dropbox Customers*," and a dedicated "Assigned Partner Manager," all of which are provided to "develop, market, and grow [the Partners'] Dropbox Integration." *See* Iyer Decl. ¶ 45, Ex. 9. Not only does SailPoint have access to a Dropbox application programming interface (API), SailPoint has *access to "early APIs"* that it uses to build custom applications such as SailPoint's Identity Governance Platform that integrates with Dropbox products and services to provide an enhanced file sharing and synchronization product for those users requiring additional security. *See id.*

Dropbox's arguments ignore the independent bases for infringement alleged against Clear Channel and SailPoint in the SAC, because it chose not to refile its motion after the SAC was served. As a result, Dropbox's entire motion is based on its assertion that SailPoint and Clear

---

[2] Since the filing of the SAC, Dropbox has changed the website where it refers to SailPoint as a "Premier Partner" to https://dropbox-prod.adobemsbasic.com/business/app-integrations/sailpoint (last visited November 6, 2022) from https://www.dropbox.com/app-integrations/sailpoint (last visited September 6, 2022). *See* Iyer Decl. ¶ 46, Ex. 10. Dropbox has also changed the website where it lists technology partners that "**extend** the value of Dropbox" and enables Dropbox's users to find "the right partners to meet your needs" to https://dropbox-prod.adobemsbasic.com/business/app-integrations (last visited on November 6, 2022) from https://www.dropbox.com/app-integrations (last visited September 12, 2022). *See id..* ¶ 47, Ex. 11.

4

Channel did not contribute to the development or design of Dropbox's products. ECF No. 43 at 2-3. But the allegations of the SAC are not directed to the development of *Dropbox's* products by SailPoint and Clear Channel. They are directed to SailPoint's and Clear Channel's customization and implementation of those products unique to the needs of those enterprise clients and their users.

Specifically Clear Channel's direct infringement is based on Clear Channel's particular use of Dropbox products and services, including its practice of method claims. ECF No. 45 ¶¶ 76-89. As in *Eli Lilly,* the customer suit is inapplicable here because "even if [Dropbox] is found to have induced infringement by inducing other direct infringers … that does not mean that [Vistra] is necessarily liable for direct infringement." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 U.S. Dist. LEXIS 55205 at *8-*9 (E.D. Tex. Apr. 26, 2016). Clear Channel's indirect infringement is based on its active promotion of Dropbox products and services.³ ECF No. 45 at 80-82.

The case for denying severance with respect to SailPoint is even more compelling. The SAC alleges direct infringement is based on SailPoint's use of Dropbox products and services (ECF No. 45, at ¶¶ 67-69), and indirect infringement based on SailPoint's development and sale of its Identity Governance Platform (including IdentityNow and IdentityIQ) that integrates with Dropbox products and services to provide an enhanced file sharing and synchronization product for those users requiring additional security. ECF No. 45, ¶¶ 70-75. Accordingly, products and

---

³ Clear Channel and Dropbox collaborated on a case-study promoting Dropbox and Clear Channel's use of Dropbox products and services. ECF No. 46 (Ex. 2). In the case-study, Clear Channel employees, including Clear Channel's IT Director made several statements promoting Dropbox. *Id.* Dropbox and Clear Channel's collaboration discloses Clear Channel's 541% return-on-investment and over $677K financial benefit gained by implementing Dropbox products and services. *Id*. This collaboration included interviews with at least three Clear Channel employees.

5

services associated with this enhanced security platform form the basis for separate acts of infringement associated with a different damages model.[4] Declaration of Stephan A. Holzen (Holzen Decl.) at ¶ 10. Dropbox's Motion does not address these allegations of the SAC.

The customer suit exception does not apply to SailPoint because it is not a customer of Dropbox nor is it in any way similarly situated to a customer of Dropbox. Notwithstanding that ▮▮▮▮▮▮▮▮▮ Dropbox's own website identifies "SailPoint as a Dropbox Premier Partner."[5] See Iyer Decl. ¶ 46, Ex. 10. See also id., at ¶ 53, ▮▮▮▮▮▮▮▮▮. SailPoint is a Dropbox "Premier Partner" in a collaborative relationship that provides enhanced software that integrates with Dropbox and is not a mere customer or mere reseller. Indeed, ▮▮▮▮▮▮▮▮▮"). See also id. at 29:3-6, 73:13-16, 78:10-12. As a Dropbox "Premium Partner," Dropbox provides SailPoint with "training, tools, and technical resources" to develop, market, and grow SailPoint's Dropbox integration. See Iyer Decl. ¶ 48, Ex. 12. Additionally, as an advantage of being Dropbox's "Premier Partner," Dropbox provides "*enhanced* technical resources, marketing development funds, and lead referral bonuses." See id. Furthermore, Dropbox drives awareness of SailPoint's Identity Governance Platform's integration through its

---

[4] Also relevant to the Court's analysis, although SailPoint and Clear Channel have represented that they would agree to be bound by the result of any separate proceedings against Dropbox in the NDCA, no Defendant has represented that Dropbox has agreed to indemnify either SailPoint or Clear Channel who are liable separate direct infringement of the Asserted Patents. See Eli Lilly, at *9-10, n. 2.

[5] Since the filing of the SAC, Dropbox has changed the website where it refers to SailPoint as a "Premier Partner" to https://dropbox-prod.adobemsbasic.com/business/app-integrations/sailpoint (last visited November 6, 2022) from https://www.dropbox.com/app-integrations/sailpoint (last visited September 6, 2022).

6

"Dropbox App Showcase" and induces infringement by SailPoint and SailPoint. See Iyer Decl. ¶ 46-48, Exs. 10-12. Accordingly, the Dropbox-SailPoint partnership[6] is far more collaborative than a relationship between a manufacturer and its customer, "mere reseller," or retail distributor. *See Realtime Data, Inc. v. Rackspace US, Inc.*, 6:16-CV-00961, 2017 U.S. Dist. LEXIS 27422, at *13-16 (E.D. Tex. Feb. 27, 2017) (finding that a collaborative relationship is inconsistent with the application of the customer relationship); *Innovative Automation,* 2012 U.S. Dist. LEXIS 114503, at *21-22. (finding the claims against a defendant are not peripheral and do not fall within the traditional manufacturer/distributor paradigm when the products are integrated into a system or method).

Citing *Nintendo,* Dropbox erroneously asserts that Plaintiff's claims against SailPoint and Clear Channel will be fully resolved by the adjudication of claims against Dropbox. ECF No. 43 at 6-7. But *Nintendo* is inapposite here. First, unlike *Nintendo*, the issues of infringement and invalidity are not common to all Defendants. The products and services at issue do not operate "off the shelf" but require configuration and customization involving collaboration between Dropbox and SailPoint and Dropbox and Clear Channel. Second, for certain acts of infringement, including method claims, Dropbox is accused of inducing indirect infringement while Clear Channel is accused of direct infringement. With respect to SailPoint, the infringing products and services involves a different product with enhanced security. *Nintendo* does not govern here.

Finally, Plaintiff's "prerogative to structure its case as it chooses" to "prove direct infringement to the jury with an actual direct infringer present as a party rather than asking the

---

[6] Dropbox's assertion that "SailPoint and Clear Channel do not have any involvement in the development or design of [Dropbox] products," is **not the same as a statement that Dropbox does not have any involvement in SailPoint's Identity Governance Platform with respect its integration with Dropbox.**

7

jury to accept that an absent third party directly infringes" also should be given its due weight. *See Eli Lilly*., at 13-15 ("the fact that a similar case could likely have been brought against Lilly in other districts is not sufficient to justify disregarding UroPep's choice of this district for its suit and requiring it to refashion its case, either by proceeding without a direct infringer, or by naming a different direct infringer in a different district" and that requiring plaintiff to alter its theory of the case would impose a substantial burden on the plaintiff).

  **B. The Court Should Deny Defendant Dropbox's Motion To Stay Claims Against SailPoint and Clear Channel**

A stay will unduly prejudice the Plaintiff's claims against SailPoint and Clear Channel, at least with respect to the method claims, and will complicate, not simplify, the issues for trial.

If stayed, Plaintiff would be forced to engage in inconvenient, inefficient, drawn out, and significantly more costly litigation over the Asserted Patents. Plaintiff's co-pending case in this District against Box also names, as a common Defendant SailPoint for infringement of the same Asserted Patents. A stay (pending resolution of claims against Box and Dropbox in the NDCA) will address only two out of the five defendants in these related cases. In contrast, substantial judicial economy will be gained by moving forward with all the Defendants in this District at the same time. Therefore, this factor weights against a stay.

Nor will a stay simplify the infringement issues, since the resolution of the severed claims against Dropbox would not resolve the claims against SailPoint and Clear Channel, which require different infringement proofs and different damages theories. Holzen Decl. at ¶ 7-15. A stay could also lead to the possibility of inconsistent judgments involving activities relating to sales of the same products or performance of the same methods.

Additionally, the parties have invested substantial resources litigating in this District. Trial is set for a little over a year from now. EFC No. 32. Briefing on claim construction is

8

completed and the Markman hearing is set for January 2023. ECF No. 52. Fact discovery is set to begin on December 2022. ECF No. 32. These factors also weigh against a stay.

    **C.    The Court Should Deny Defendant Dropbox's Motion To Transfer to NDCA**

If the claims against SailPoint and Clear Channel are not severed, the Court should deny Dropbox's motion to transfer, because Dropbox has failed to provide any evidence that venue in NDCA would be proper for co-defendants SailPoint and Clear Channel. But even if the Court severs the claims against SailPoint and Clear Channel, the case against Dropbox should not be transferred to NDCA. This is because Dropbox has failed to carry its burden to demonstrate that the transferee venue clearly is more convenient than WDTX, as the private and public factors concerning convenience weigh against transfer.

    1.    <u>This Case Could Not Have Been Brought In NDCA</u>

Section 1404(a) focuses primarily on whether a civil action might have been brought in the transfer destination venue. *Flygrip, Inc. v. Amazon.com, Inc.*, No. 21-CV-01081-ADA, 2022 U.S. Dist. LEXIS 114783, at *4, (W.D. Tex June 28, 2022), citing *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008)(cited as *Volkswagen II*). As this Court has recognized, "[t]he burden to prove that a case might have been brought in the transferee venue falls squarely upon the movant." *Flygrip*., citing *Volkswagen II*, 545 F.3d at 315 ('a moving party . . . must satisfy the statutory requirements and clearly demonstrate that a transfer is [for convenience]')." Further, "[t]he burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient." *Id*. at *6.

Dropbox's mere statement that this action *could* have been brought in NDCA, because Dropbox is headquartered there, completely ignores the fact that other co-defendants in this action are not headquartered there, and it offers no evidence that jurisdiction and venue in NDCA would be proper for those defendants. ECF No. 43 at 9. If the Court denies the motion to sever

9

co-defendants SailPoint or Clear Channel, the Court should deny the motion to transfer outright. *Flygrip*, 2022 U.S. Dist. LEXIS 114783 at *14 ("If the movant has not satisfied that burden, the Court cannot transfer the case.", citing *Japan Display Inc. v. Tianma Microelectronics Co.*, No. 2:20-CV-00283-JRG, 2021 U.S. Dist. LEXIS 160256, at *8 (E.D. Tex. Aug. 25. 2021)). See also *Eli Lilly* 2016 U.S. Dist. LEXIS 55205, at *13, n. 3.

    2.    <u>Private Factors Support Denying Transfer of this Case from This District</u>

Even if the Court grants the motion to sever the claims against co-defendants SailPoint and Clear Channel, Dropbox has not met its heavy burden to demonstrate that the transferee venue, NDCA, is clearly more convenient than the present venue. As explained below, the private and public interest factors for determining the convenience of the parties and witnesses favor denying the motion to transfer.

    a.    *The Sources of Proof Are Easily Accessed in This District*

Dropbox does not identify any specific relevant hard copy documents regarding the design and operation of the accused technology and cannot even say if any exists. ECF No. 43 at 10. If any such hard copy documents do exist, Dropbox cannot say if they are located in NDCA or in its Seattle location. *Id*. As for Dropbox's source code, which Dropbox states is "perhaps the best evidence of how the accused technology works," Dropbox does not say where it is located, but admits that it is not maintained in NDCA; it is maintained in Northwest Oregon, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. and Iyer Decl. ¶ 53, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As for the location of electronic documents, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.,* ¶ 53, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Documents possessed by SailPoint and Clear Channel and third parties are relevant to the claims in this action and those documents are located in Texas. The third parties located in

10

Texas, namely, KIPP schools, Tellepsen Builders, The Core Technology Group, Technology and Beyond, One Stop Cyber, Off & On Computer Services, Accudata Systems, and Reds PC, all are likely to have documents in Texas that are relevant at least to proving inducement to infringe claims of the patent-in-suit.

Dropbox ignores the location of co-defendants' documents in Texas. Particularly relevant are the location of SailPoint's documents concerning SailPoint's *collaboration* with Dropbox to integrate its Identity Governance Platform with Dropbox products and services, and Clear Channel's documents concerning Clear Channel's *collaboration* with Dropbox in customizing Dropbox products and to prepare case studies of Clear Channel's use of Dropbox products and services. ECF No. 45, ¶¶ 13, 63, 68, 70-74 (SailPoint), 78 (Clear Channel) and ECF No. 46 (Ex. 2). *See infra* n. 2. Even if the claims against SailPoint and Clear Channel are severed, their documents still are relevant to the claims of Dropbox's indirect infringement based on Clear Channel's and SailPoint's direct infringement. Those documents are stored at those companies' locations in Texas.

     b. *Key Defendant Witnesses and Third Party Witnesses are in This District and Within the Subpoena Power of This Court and Not NDCA*

Dropbox continues to provide Dropbox products and services to third parties in Texas, including SailPoint and Clear Channel, knowingly inducing direct infringement of one or more claims of the patents-in-suit. ECF No. 45, ¶¶ 42-65.

SailPoint has its headquarters in Austin, Texas. ECF No. 53, ¶¶ 5-6. Witnesses relevant to proving SailPoint's infringement and related damages, such as those knowledgeable about integration, development, and configuration of the Dropbox products and services with SailPoint's products are highly likely to be at SailPoint's headquarters, which is within this District. *See* Iyer Decl. ¶ 49, Ex. 13.

11

Plaintiff may call as witnesses SailPoint employees and former employees having relevant technical and economic knowledge about SailPoint's enhanced file sharing and synchronization product, including at least the six witnesses identified in the Holzen and Iyer declarations. Holzen Decl. at ¶ 25 and Iyer Decl. ¶ 3, Ex. 2.

Clear Channel's principle executive office is in San Antonio, Texas. Plaintiff would seek testimony from Clear Channel's current and previous employees relevant to (1) its collaboration with Dropbox in customizing and implementing the infringing technology, (2) the value Clear Channel obtains from its use of the infringing technology, and (3) Clear Channel's participation on its case study with Dropbox on the benefits of its use of the infringing technology including, at least the four Clear Channel witnesses identified in the Holzen and Iyer declarations. Holzen Decl. at ¶ 27 and Iyer Decl. ¶ 3, Ex. 2; ECF No. 53, ¶¶ 5-6; and ECF No. 46 (Ex. 2).

Plaintiff may also call as witnesses, third party witnesses who configure and implement Dropbox products with their IT systems are located in Texas including Tellepsen Builders, Brandt, KIPP Houston, Reds PC and Technologies, Accudata Systems, The Core Technology Group, One Stop Cyber, Technology and Beyond. Holzen Decl. at ¶ 23 and Iyer Decl. ¶ 3, Ex. 2. Such large enterprise third party users and resellers would have evidence relevant to the configuration, bundling, implementation, and economic value of the infringing technology in their respective economic segments, *i.e.*, higher education and commercial construction.[7] Holzen Decl. at ¶ 23. In this regard, Plaintiff may call as witnesses employees and former employees of these third parties having relevant technical and economic knowledge, including, at least the

---

[7] In fact, Dropbox has dedicated webpages promoting Dropbox products and services to educational institutions. Iyer Decl. ¶ 50, Ex. 14. Additionally, Dropbox has dedicated webpages promoting Dropbox products and services to construction teams to "[m]anage projects from start to finish." *See* Iyer Decl. ¶¶ 51-52, Exs. 15-16.

12

thirteen witnesses identified in the Holzen and Iyer declarations. Holzen Decl. at ¶ 23 and Iyer Decl. ¶ 3, Ex. 2.

### c. Local Defendants' Witnesses and Willing Third Party Witnesses Can Access the Trial and Attend Trial More Easily in This District

Dropbox's Austin, Texas location for the company has about 270 employees. ECF No. 43-1, ¶ 11 (Hill Decl.), Iyer Decl. ¶ 53, ███████████████████████████████. In Austin, Dropbox carries out engineering, product development marketing, sales, finance, customer assistance and support activities. *Id.*, at ███████████████████████████. Dropbox's employees in its Austin office, who likely have relevant information and may be called to testify in the action, including at least twelve Dropbox witnesses identified in the Iyer declaration. Iyer Decl. ¶ 3, Ex. 2.

### d. Other Practical Issues Favor Denying Transfer to NDCA

Finally, the related suit[8] is pending in this District with the exact same patents at issue here, a common defendant, and a similar schedule weighs against transfer. ECF No. 43, ¶ 13.

## 3. Public Interest Factors Also Support Denying Transfer of this Case from This District

### a. Administrative Difficulties Favor Denying Transfer to NDCA

This factor concerns "'whether there is an appreciable difference in docket congestion between the two forums.'" *Parkervision, Inc. v. Intel Corp.*, 2021 U.S. Dist. LEXIS 24588 (W.D. Tex. Jan 26, 2021) (citations omitted). The relevant inquiry here is "[t]he speed with which a case can come to trial and be resolved[.]" *Id.* citing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

---

[8] Topia Technology, Inc. v. Dropbox, Inc., SailPoint Technologies Holdings, Inc., and Vistra Corp., 6:21-cv-1372-ADS (W.D. Tex.).

13

For the 12-month period ending June 30, 2022, the median time to trial in WDTX is 28.3 months versus 34.7 months in NDCA. Iyer Decl. ¶ 55, Ex. 19 at 37 and 66. The trial date in this action has been scheduled for December 2023, ECF No. 32, just over 13 months away, while it is unlikely the NDCA court would conduct a trial by or before December 2023 in the event of a transfer, based on the medium times to trial. Furthermore, during that same12-month period the number of civil actions per judgeship was higher in NDCA than in WDTX: 626 civil actions/judgeship in NDCA compared to 357 civil actions/judgeship in WDTX. Iyer Decl. ¶ 55, Ex. 19 at 37 and 66. Accordingly, this factor weighs strongly against transfer.

> b. *Local Interests, Including Infringement Claims Against the Local Defendants, Favor Having This Case Decided in This District*

There is "a local interest in having localized controversies decided at home." *Parkervision,* 2021 U.S. Dist. LEXIS 24588 at *21 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947)), and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981).

Dropbox asserts that "NDCA has a strong local interest in this case," simply because Dropbox has had its headquarters in NDCA since 2006, the accused products were "primarily" designed at various locations in NDCA, and its executives and other employees are located in NDCA. ECF No. 43 at 14-15.

Dropbox fails to point out that the WDTX has a strong interest in this case and that Austin was the "obvious choice" to open its second office in which it could build out its "sales and customer experience and peoples teams for the Americas." Iyer Decl. ¶ 54, Ex. 18.

Dropbox has well-known resellers in Texas, including Tellepsen Builders, Brandt, KIPP Houston, Reds PC and Technologies, Accudata Systems, The Core Technology Group, One Stop Cyber, Technology and Beyond. Holzen Decl. at ¶¶ 16, 23.

14

Furthermore, Dropbox concedes in its alternative motion for transfer that Austin has an interest in this case due to Dropbox's facility there. ECF No. 43 at 15.

Dropbox also ignores the local interests of SailPoint and Clear Channel, both of which are Texas companies having their headquarters and principal place of business in Texas, and clearly having a bearing on the local interest.

## III.     CONCLUSION

For the foregoing reasons, given the foregoing, Plaintiff respectfully requests that the Court (1) deny severing and staying the claims against SailPoint and Clear Channel, and (2) rule against transferring this action to NDCA.

Dated: November 7, 2022                          Respectfully submitted,

                                                 */s/ Raymond W. Mort, III*
                                                 Raymond W. Mort, III
OF COUNSEL:                                      Texas State Bar No. 00791308
                                                 raymort@austinlaw.com

Raja N. Saliba                                   THE MORT LAW FIRM, PLLC
Michael R. Dzwonczyk                             100 Congress Ave, Suite 2200
Chidambaram S. Iyer                              Austin, Texas 78701
Mark Boland                                      Tel/Fax: (512) 865-7950

SUGHRUE MION, PLLC                               ATTORNEYS FOR PLAINTIFF
2000 Pennsylvania Ave., NW                       TOPIA TECHNOLOGY, INC.
Washington, DC 20037
(202) 293-7060
mboland@sughrue.com
rsaliba@sughrue.com
mdzwonczyk@sughrue.com
ciyer@sughrue.com

15